Filed 7/20/26  P. v. Clark CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN MARK CLARK, JR.,<br>        Defendant and Appellant. | C103170<br><br>(Super. Ct. No. 24FE017011) |

Defendant John Mark Clark, Jr., appeals from his conviction on two counts of failing to register as a sex offender as required by the Sex Offender Registration Act (the Act) (Pen. Code, § 290 et seq.).[1]  He argues (1) there was insufficient evidence he resided in California at the time of the alleged offenses and the trial court thus erred in denying his motion for acquittal pursuant to section 1118.1; (2) his conviction on both counts violates the corpus delicti rule; (3) there is insufficient evidence to sustain his conviction on one of the counts; and (4) the prosecutor committed misconduct during closing argument.  We disagree with all of his arguments and thus affirm.

## BACKGROUND

Clark was charged with one count of failing to register within five working days of his birthday, as required by section 290.012; and one count of failing to register upon

---

[1]     Further undesignated statutory references are to the Penal Code.

1

release from incarceration, as required by section 290.015.[2]

The parties stipulated Clark was convicted of a sex offense that required him to register pursuant to the Act.

The People's evidence showed the following. On September 25, 2024, Officer Tera Carson of the Sacramento Police Department was patrolling an area behind a grocery store located in the 5300 block of Stockton Boulevard in Sacramento when she approached a group of approximately six people, one of whom was Clark. Officer Carson asked the group, "Do you guys all live close by or how did you get back here?" and one person responded that he was "[h]omeless." Officer Carson then asked Clark, "How about you," and he responded that he lived "nearby" or "close by." Officer Carson searched Clark and found two baggies in his pants pocket containing what she believed to be marijuana and methamphetamine. Clark was arrested and booked in county jail.

Footage from Officer Carson's body camera was introduced into evidence. That footage shows her approaching a group of people sitting in a dirt area next to a parking lot. There are several bikes, one or two baby strollers, what appears to be a push cart, what appears to be an overturned desk chair, and several boxes or plastic crates near the group. Clark is sitting in a wheelchair. Officer Carson asks Clark if he is able to stand, and he replies, "No." She helps him stand and then searches his pockets. When one of the members of the group tells Officer Carson he is homeless, she asks, "How about you Mr. Clark?" and he responds, "I live close by." She then asks if he lives in the unit across the street, and he shakes his head. She then asks if he lives in an "actual house," and he says no.

Sacramento Police Department Detective William Goggin was assigned to the Sacramento County Sexual Assault Felony Enforcement (SAFE) Task Force, and his

---

[2] He was also charged with one count of possession of methamphetamine, but the jury found him not guilty on that count, and we thus do not discuss it further.

duties include monitoring and supervising convicted sex offenders and investigating violations of section 290. He explained that a person who is required to register must do so every year within five working days of his or her birthday (and we note Clark's birthday is July 19). In addition, a person who is incarcerated for a period exceeding 30 days must reregister within five working days of their release. Finally, a person who is transient is required to reregister every 30 days,[3] and a person who changes his or her residence must notify law enforcement within five working days. Registration must be done in person, and the registration office for Sacramento County is located in Sacramento.

Detective Goggin was notified of Clark's arrest, and on October 10, 2024, he obtained and reviewed Clark's registration history, and copies of that history were introduced into evidence. That history dates back to Clark's initial registration in July 2003 and it lists every "registration event" that occurred thereafter. Detective Goggin explained a new registration event would be created each time Clark went to the office to register. Clark was frequently transient, and because he had to register every 30 days when he was transient, his history contained numerous registration events. All told, he had over 110 registration events between his initial registration in July 2003 and July 20, 2023. He always registered in Sacramento, and he always gave either an actual address in Sacramento or Sacramento County[4] or noted he was "Transient."

_____

[3]     "For purposes of the [A]ct, 'transient' means a person who has no residence. 'Residence' means one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address, including, but not limited to, houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles." (§ 290.011, subd. (g).)

[4]     In 2003 and 2004, Clark registered at an address in Rio Linda, which is in Sacramento County. All other addresses were in Sacramento.

Clark last registered on July 20, 2023, which was the day after his birthday. He gave his address as 4990 Stockton Boulevard in Sacramento. He had given that same address on May 12, 2023, when he registered a change of address within the jurisdiction. Detective Goggin went to that address and learned it was a "follow-on care facility" and not a permanent residence, and the maximum amount of time a person could stay there was 90 days.

Clark's birthday is July 19, and he was thus required to complete his annual registration within five days of July 19, 2024. As of October 10, 2024, when Detective Goggin obtained Clark's registration history, he had not done so. Detective Goggin also reviewed Sacramento County's "custody record" or "known person file," which showed Clark was in Sacramento County jail from May 14 to July 9, 2024. Detective Goggin testified Clark was required to reregister within five working days of his release, but his registration history showed he did not do so.

At the close of the People's case, Clark made a motion pursuant to section 1118.1, arguing the People failed to present sufficient evidence he resided in Sacramento County at the time of the violations. In particular, he argued his prior registration history in Sacramento, his presence in Sacramento on September 15, 2024, and his statement to Officer Carson that he lived nearby were not sufficient to show he "continued to remain a resident of this county for the violation period." The court denied the motion, stating, "I'll note … that for anyone familiar with the County, the location where the defendant was encountered is, I believe, nowhere near the County line. I think that him being found in the County — in the City … on the date in question … in addition to the other evidence along with his own statement that he lives close by is sufficient evidence to present to the jury."

The jury was instructed that, as to both counts, the People had to prove Clark "resided in Sacramento, California," and both sides addressed this element in their

4

closing arguments (we will describe the closing arguments in more detail below, when we discuss Clark's prosecutorial misconduct argument).

The jury found Clark guilty of both counts, and he filed a timely notice of appeal.

**DISCUSSION**

*I*

*The Act's Registration Requirements*

The Act requires certain convicted sex offenders to register with appropriate law enforcement agencies "while residing in California." (§ 290, subd. (a); see also *People v. Mosley* (2015) 60 Cal.4th 1044, 1048 ["California law has long required persons convicted of certain specified sex crimes" "to register as sex offenders as long as they live or work in California"].) The purpose of the Act " 'is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' [Citations.] Plainly, the Legislature perceives that sex offenders pose a 'continuing threat to society' [citation] and require constant vigilance." (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.)

It is undisputed that Clark was convicted of a sex offense that required him to register pursuant to the Act. He was charged with violating section 290.012, which required him to register every year "within five working days of his … birthday." (§ 290.012, subd. (a).) He was also charged with violating section 290.015, which required him to register "within five working days of his … release after serving a jail sentence of 30 days or more." (*People v. Toloy* (2015) 239 Cal.App.4th 1116, 1118-1119 (*Toloy*); see also § 290.015, subd. (a).) Finally, although he was not charged with violating this provision, we note section 290.013 provides, "A person who was last registered at a residence address pursuant to the Act who changes his or her residence address, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, shall, in person, within five working days of

5

the move, inform the law enforcement agency or agencies with which he or she last registered of the move, the new address or transient location, if known, and any plans he or she has to return to California." Because Clark was last registered at a residence address in Sacramento (i.e., the 4990 Stockton Boulevard address), he was required to inform Sacramento authorities if he moved out of either Sacramento or California, but he did not do so.

When a defendant is charged with failing to register, the People have the burden of proving the defendant was residing in California at the time of the violation. (*People v. Wallace* (2009) 176 Cal.App.4th 1088, 1102-1107.) Most of Clark's arguments concern this requirement.

*II*
*The Section 1118.1 Motion*

Section 1118.1 provides, "In a case tried before a jury, the court on motion of the defendant … at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." Clark argues there was insufficient evidence he was residing in California at the time of the two charged offenses to sustain a conviction, and the trial court thus erred in denying his section 1118.1 motion. We disagree.

"An appellate court reviews the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction. [Citation.] 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We

6

presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence … . [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citation.] Review of the denial of a section 1118.1 motion made at the close of a prosecutor's case-in-chief focuses on the state of the evidence as it stood at that point."[5] (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

Clark's birthday is July 19. Thus, assuming he resided in California at the time, he was required to complete his annual registration between July 12 and July 26, 2024. And because he was released from custody in the Sacramento County jail on July 9, 2024, he was also required to register within five working days of that date, or by July 16, 2024. We find there was sufficient evidence Clark was residing in California during the last few weeks of July 2024 to sustain his conviction on both counts.

The evidence showed that, between July 2003 and July 2023, Clark registered over 110 times in Sacramento, signifying he resided in Sacramento and/or Sacramento County during that entire 20-year period. When he last registered on July 20, 2023, he gave an address on Stockton Boulevard in Sacramento. He was in the Sacramento County jail from May 14 to July 9, 2024, and he was released in Sacramento. Two and a half months after being released in Sacramento, he was found by police on Stockton Boulevard in Sacramento and he told officers he lived close by. Finally, if Clark had moved out of either Sacramento or California, he was required by section 290.013 to inform Sacramento authorities of that fact, but he did not do so, which supports an inference he

---

[5] Clark did not submit any evidence in this case, and the evidence at the close of the prosecutor's case-in-chief was thus also the entirety of the evidence.

never left (and as we discuss below, he acknowledges such an inference was permissible). Viewed in its totality, this evidence is sufficient to support a finding Clark resided in California during the relevant time period.

Clark disagrees, and contends there was an "evidentiary gap" about where he lived between the time he was released from Sacramento County jail on July 9 and the time he encountered police in Sacramento on September 25. Although there may be no direct evidence he remained in Sacramento during this time period, we find the evidence viewed as a whole supports a reasonable inference that he did and is thus sufficient to fill this gap. (See *People v. Grant* (2020) 57 Cal.App.5th 323, 330 [" 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence' "].)

Clark argues this case is similar to *People v. Wallace, supra*, 176 Cal.App.4th 1088, and his conviction should be reversed for the same reason it was reversed in that case. *Wallace* is distinguishable. The defendant in *Wallace* challenged his convictions for (1) failing to register within five working days of changing his residence within any city or county and (2) failing to register within five working days of his December 7 birthday. (*Id*. at pp. 1091-1092, 1094, 1100, 1104.) The evidence showed he registered in Pittsburg, California, eight times between July 2003 and January 2006, and he did not register anywhere in California thereafter. (*Id*. at pp. 1093-1094.) On six occasions between November 2006 and May 2007, a real estate broker inspected the last address at which the defendant had registered and found it vacant. (*Id*. at p. 1094.) In April 2007, the Pittsburg Police Department checked that address and found it vacant, and a warrant was issued for the defendant's arrest. (*Ibid*.) We are not told when or where he was arrested, and it appears there was no evidence regarding his whereabouts between the time of his last registration in January 2006, and his arrest sometime after April 2007.

The defendant argued the evidence was insufficient to sustain the convictions and the appellate court agreed. It held the prosecutor had to prove the defendant had moved

8

to a location within California in order to establish he violated the requirement to register within five days of changing his or her residence, because "if he left California after vacating his last registered address in Contra Costa County, his failure to register a new address or location anywhere in California within five working days would not amount to a violation of this provision." (*People v. Wallace, supra*, 176 Cal.App.4th at p. 1103.)  It found there was no evidence regarding the defendant's whereabout after he left his last registered address, and his registration history was insufficient to support an inference he remained in California.  (*Ibid*.)  For similar reasons, the court found there was insufficient evidence he continued to live in California in December 2006, when he would have been required to complete his annual registration.  (*Id*. at p. 1105.)

This case is distinguishable because, unlike in *Wallace*, Clark's registration history was not the only evidence presented on the issue of whether he remained in California in July 2024.  There was also evidence Clark was in jail in Sacramento from May 14 to July 9; he was found in Sacramento two and a half months after his release, and he told police he lived nearby; and he never informed Sacramento authorities he had moved out of the jurisdiction.  Again, viewed as a whole, the evidence is sufficient to support an inference he remained in Sacramento at the time of the violations.

Clark also argues this case is similar to *People v. Balkin* (2006) 145 Cal.App.4th 487, and his conviction should be reversed for the same reason it was reversed in that case.  *Balkin* is also distinguishable.  The defendant in *Balkin* was convicted of failing to register within five days of "coming into" Los Angeles.[6]  The evidence showed he was in

---

[6]    Section 290, subdivision (b), requires a person to register "within five working days of coming into … any city, county, or city and county."  At the time *Balkin* was decided, this provision was found in section 290, subdivision (a)(1)(A).  (*People v. Balkin, supra*, 145 Cal.App.4th at pp. 490-491.)

prison in Chino, California[7] in 2001 and 2003, and he was "paroled on April 3, 2005," but there was "no evidence to establish the prison from which [he] was paroled." (*Balkin*, at p. 490; see *id*. at pp. 489-490.) The sex offender registration database "had no record of defendant registering … at any time." (*Id*. at p. 490.) The defendant was arrested on April 21, 2005, in downtown Los Angles, and he gave a Los Angeles address "as the location where he received mail." (*Ibid*.) He argued there was no evidence he entered Los Angeles within five days before he was arrested, and the court agreed. It noted that although the defendant had a Los Angeles mailing address, "there was no evidence to establish when defendant secured that address or moved into the city or county — it could have been one day prior to his arrest or more than five days." (*Id*. at pp. 492-493.)

This case is distinguishable because Clark was not charged with failing to register within five days of entering Sacramento. And for the reasons stated above, we find the evidence is sufficient to support a finding he resided in California at the time of the offenses, and the trial court thus did not err in denying his motion for acquittal pursuant to section 1118.1.

### III
### *The Corpus Delicti Rule*

Clark argues reversal is also required because, other than his statement to police that he lived nearby, there was insufficient evidence he resided in California at the time of the offenses to satisfy the corpus delicti rule. We disagree.

Our Supreme Court has described the corpus delicti rule as follows: "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself — i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this

---

[7]     Chino is in San Bernardino County.

10

burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169.) "This rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened." (*Id*. at p. 1169.) The rule "prohibits *conviction* where the only evidence that the crime was committed is the defendant's own statements outside of court" and it "allows the defendant, on appeal, directly to attack the sufficiency of the prosecution's independent showing."**8** (*Alvarez*, at p. 1180.) "The amount of independent proof of a crime required [to satisfy the corpus delicti rule] is quite small; we have described this quantum of evidence as 'slight' [citation] or 'minimal' [citation]." (*People v. Jones* (1998) 17 Cal.4th 279, 301.) " 'The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible.' " (*People v. Gonzalez* (2021) 12 Cal.5th 367, 382.) "The inference need not be 'the only, or even the most compelling, one … [but need only be] a *reasonable* one.' " (*Jones*, at pp. 301-302.) Once sufficient independent evidence of the corpus delicti is adduced, "the defendant's statements may be considered to strengthen the case on all issues." (*Alvarez*, at p. 1181.)

Clark argues that, because the prosecution had to prove he resided in California at the time of the offense, the corpus delicti rule required some evidence of his residency independent of his statement to police that he lived close by. We find there was such independent evidence. As the trial court noted, "the defendant was found in the location [i.e., Sacramento] at the moment in question," and "presence [in Sacramento] is some

---

**8**     The corpus delicti rule also "requires an instruction to the jury that no person may be convicted absent evidence of the crime independent of his or her out-of-court statements." (*People v. Alvarez, supra*, 27 Cal.4th at p. 1180.) Here, the jury was given CALCRIM No. 359, which explains the corpus delicti rule, and Clark does not challenge the instruction or contend it was inadequate.

11

evidence." To this we would add the other evidence described above, including Clark's 20-year registration history in Sacramento; his presence in the Sacramento County jail between May and July 2024; his release in Sacramento; and his failure to notify Sacramento authorities he was leaving Sacramento. This other evidence is sufficient to satisfy the corpus delicti rule.

*IV*
*Evidence of Knowledge as to Count Two*

" '[A] violation of section 290 requires actual knowledge of the duty to register.' " (*Toloy, supra*, 239 Cal.App.4th at p. 1123.) Clark argues his conviction on count two must be reversed because there was insufficient evidence he had actual knowledge he was required to reregister after being released from jail.[9] We disagree.

The evidence showed that in July 2023, when he completed his annual registration, Clark signed and initialed a document stating he had been notified of and understood the following: "I must re-register in person, if I have previously registered, within five (5) working days, after release from incarceration … that lasted 30 or more days." The evidence also showed Clark had signed and/or initialed documents containing similar statements on at least five other occasions: (1) in December 2004, (2) April 2016, (3) August 2016, (4) December 2017, and (5) March 2018. This is sufficient to support the jury's finding that Clark knew he had to reregister when he was released from jail in July 2024.

Clark disagrees. He quotes the following statement from *Toloy, supra*, 239 Cal.App.4th at page 1123: " '[1] A jury may infer knowledge from notice, but [2] notice alone does not necessarily satisfy the willfulness requirement.' " (Bracketed numbers added.) He focuses entirely on the second part of the statement and completely

---

**9** Clark acknowledges, "there was sufficient evidence that he knew he had to register within five working days of his birthday … (as pertinent to count one)."

ignores the first part. Here, the jury was instructed on count two that the People had to prove Clark "actually knew" he had a duty to register "upon [his] release from incarceration."[10] "We assume the jury followed this instruction" (*People v. Trinh* (2014) 59 Cal.4th 216, 252), and the evidence of notice described above is sufficient to sustain the jury's finding that he had such knowledge.

Moreover, the *Toloy* court's statement that "notice alone does not necessarily satisfy the willfulness requirement" is actually a quote from *People v. Garcia* (2001) 25 Cal.4th 744. The defendant in *Garcia* challenged his conviction for failing to register, arguing he was unaware of the registration requirement. The evidence showed that, before he was released from prison, he signed a form titled " 'Notice of Registration Requirement' " that stated he had been notified of his duty to register. (*Id*. at pp. 748-749.) At trial, he testified, "he remembered meeting with a prison official and signing a number of documents before he was released" but "he did not read the notice of registration requirement before he signed it" and "no one read this document to him or explained his duty to register." (*Id*. at p. 749.) The jury was instructed it had to find the defendant " '*willfully* failed' " to register, and " '[t]he word "willfully" … means with a purpose or willingness … to make the omission.' " (*Id*. at p. 751.) The jury was also instructed, " 'When the evidence shows that the person voluntarily did that which the law declares to be a crime, it is no defense that he did not know that the act was unlawful or that he believed it to be lawful.' " (*Ibid*.) The defendant argued, "the instructions failed to make it clear to the jury that a 'willful' failure to register requires a finding that he actually knew about his duty to register. In defendant's view, the 'ignorance of the law is no excuse' instruction [citation] was misleading because it suggested the jury could convict defendant even if he had no actual knowledge of the registration requirement."

---

**10**     Clark does not challenge the instruction.

13

(*Ibid*.)  The Attorney General, in contrast, argued, "actual knowledge is not an element of the offense" and " 'it is the fact of actual notice — not actual or probable knowledge — which is required,' " and "[t]he Court of Appeal agreed with the Attorney General." (*Ibid*.)  As described by our Supreme Court, "*the Court of Appeal believed that notice, not knowledge, is the critical element* under the registration statute."  (*Ibid*., italics added.)

Our Supreme Court agreed with the defendant and held, "In a case like this, involving a *failure* to act, we believe section 290 requires the defendant to actually know of the duty to act. …  [A] sex offender is guilty of a felony only if he 'willfully violates' the registration … provisions of section 290.  [Citations.]  The word 'willfully' implies a 'purpose or willingness' to make the omission.  [Citation.]  Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed. …  Accordingly, a violation of section 290 requires actual knowledge of the duty to register.  *A jury may infer knowledge from notice, but notice alone does not necessarily satisfy the willfulness requirement*."  (*People v. Garcia, supra*, 25 Cal.4th at p. 752, italics added.)  Thus, when it stated, "notice alone does not necessarily satisfy the willfulness requirement," the court was explaining that — contrary to the Court of Appeal's holding — notice alone was not sufficient.  To the extent Clark contends that notice alone can never satisfy the knowledge requirement, we disagree and point him back to the first part of the Supreme Court's statement — i.e., that "[a] jury may infer knowledge from notice."  (*Ibid*.)

Clark also notes section 290.017 provides that a person must be notified of their duty to register each time they are released from jail, but there was no evidence he was provided with such notice when he was released from jail in July 2024.  This may be true, but it is not grounds for reversal.

Section 290.017, subdivision (a), provides, "Any person who is released, discharged, or paroled from a jail … , who is required to register pursuant to the Act,

14

shall, prior to discharge, parole, or release, be informed of his or her duty to register under the Act by the official in charge … , and the official shall require the person to read and sign any form that may be required by the Department of Justice, stating that the duty of the person to register under the Act has been explained to the person." This provision is not limited to a section 290 registrant's initial release from confinement and applies to "each release." (*Toloy, supra*, 239 Cal.App.4th at p. 1122.) Case law teaches, however, "that the failure to comply with section 290.017 does *not* mean that defendant cannot be convicted of failure to reregister" upon release from incarceration. (*Ibid*., italics added.) As long as there is "substantial evidence that defendant had actual knowledge of his duty to reregister after his … release from jail, the failure to notify him of his duty did not preclude a conviction for failing to reregister." (*Id*. at p. 1124.) And for all the reasons we have discussed, we find there was such evidence in this case.

## V
## *Prosecutorial Misconduct*

Clark's final argument is that the prosecutor committed misconduct during his rebuttal closing argument by misstating the law. He acknowledges his counsel did not object at the time, and he also acknowledges the rule that "[a] defendant's 'failure to object and request an admonition waives a misconduct claim on appeal unless an objection would have been futile or an admonition ineffective.' " (*People v. Jackson* (2016) 1 Cal.5th 269, 367.) He contends an objection "[a]rguably" would have been futile because the trial court had rejected a similar argument when it considered his section 1118.1 motion. Assuming we are not convinced by his futility argument, he also cites the rule that "[a]n appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party" and "[w]hether or not it should do so is entrusted to its discretion." (*People v. Williams* (1998) 17 Cal.4th 148,

15

161, fn. 6.) We elect to reach the merits of Clark's prosecutorial misconduct argument and find no misconduct.[11]

A. Relevant portions of closing arguments

During closing argument, the prosecutor acknowledged, "I have to prove that Mr. Clark actually resided in Sacramento County." He then went through the evidence that proved residency, including the fact that all Clark's prior registrations were in Sacramento; the most recent address he gave in July 2023 was in Sacramento; when he was contacted by Officer Carson in September 2024 he was in Sacramento, less than half a mile away from the address he had given in July 2023, and he told Officer Carson he lived close by; and he was in custody in Sacramento from May to July 9, 2024.

The prosecutor then stated: "I want to talk about one thing. There is actually a requirement. If Mr. Clark were to move out of Sacramento County, I want to direct your attention to box 10 on … People's Exhibit 2, box number 10, and this is the last thing that Detective Goggin told us about this issue.[12] Mr. Clark signed and acknowledged that if he changed his address to a new address, either within or outside the jurisdiction, he has a

---

[11]    Clark also contends his counsel's failure to object constituted ineffective assistance, but we need not address this argument, and even if we did address it, our finding that there was no misconduct means his "claim of ineffective assistance of counsel must fail" as well. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 120; see also *People v. Sanchez* (2019) 38 Cal.App.5th 907, 915 ["defendant's claim of ineffective assistance turns on whether the prosecutor did, in fact, engage in misconduct to which an objection would have been meritorious"].)

[12]    People's exhibit 2 was the annual registration form Clark filled out in July 2023, and box 10 — which he initialed — states, "If I change my registered address to a new address, either within the same jurisdiction or anywhere inside or outside of the state, I must inform the last registering agency or agencies in person within five (5) working days before or after I leave." And the last thing Detective Goggin testified was, "If [Clark] were to change his residence, he has the same requirement … to notify us, and that's if you move within the jurisdiction, anywhere inside or outside of the State, … you are required to notify law enforcement within the five working days."

duty to notify within five days. [¶] So we didn't talk too much about this. But all of this, the fact that Mr. Clark never updated his address telling he moved out of Sacramento County, all of that suggests that he did live and was a resident in Sacramento County. And we could look at his previous change of address registrations.[13] This is a process that Mr. Clark is familiar with. We know that because he's done it before." Clark has no complaints about this argument. In fact, he acknowledges it was "permissible" for the prosecutor to argue "the jury could infer from [Clark's] failure to file a change of address notification that he had, in fact, continued to reside in Sacramento," and again, "the prosecutor was free to argue that the jury could infer that [he] remained in Sacramento based on his failure to file a change of address form."

In her closing argument, defense counsel argued, "I don't have to prove anything to you. I don't have to prove to you that Mr. Clark moved. I don't have to prove to you that there was any other place that he should have been registering. [¶] *In fact, he could have been somewhere else. He could have violated that registration.* It's not on me. It's their burden to prove to you that he continued to be a resident of this county, that he continued to live here." (Italics added.)

Seemingly in response to this portion of defense counsel's argument, the prosecutor argued the following in his rebuttal: "And what it seems like the defense is trying to do is say that he's not guilty … because he broke the forms, box number 10, which required him to notify us anyway had he left the county. They can't have their cake and eat it too, folks. *There is no way that Mr. Clark doesn't live in the County of Sacramento and still was compliant with his 290 registration.* [¶] When we look at the

---

**13** Clark's registration history shows at least 10 registrations events were to notify authorities he had changed his address in Sacramento County.

17

combination of *box 7, box 8, and box 10,*[14] you'll see that it's very clear. And it does lead, all of the evidence in this that I have presented, to the conclusion that Mr. Clark is guilty." (Italics added.) Clark argues the italicized portion of the argument "went too far" and misstated the law because it effectively told the jury "that even if they believed [he] had moved out of Sacramento, the verdict should still be guilty because by not filing the required change of address form, [he] would still be out of 'compliance' with section 290[.013]."

B. Analysis

It is considered error or "misconduct" for the prosecutor "to misstate the law to the jury, and bad faith is not required. [Citation.] But a prosecutor is allowed to vigorously argue the case and is afforded 'significant leeway' in discussing the facts and the law in closing argument." (*People v. Azcona* (2020) 58 Cal.App.5th 504, 516.) Even if the prosecutor makes one statement that, "when viewed in isolation, did misstate the law," there is no error if, "in the context of the entire argument and jury instructions, it was not reasonably likely the jury understood or applied the statement in an improper or erroneous manner." (*People v. Meneses* (2019) 41 Cal.App.5th 63, 66.) And again: "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.) "If the challenged comments, viewed in context, 'would have been taken by a juror to

---

**14** Box 7 outlines the requirement to register after being released from incarceration, box 8 outlines the annual registration requirement, and as just noted, box 10 outlines the change of address registration requirement.

state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.) Moreover, and somewhat relatedly, "Prosecutorial misconduct is reviewed for prejudice. [Citation.] [¶] '[A]rguments of counsel "generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law." [Citation.]' [Citation.] 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' " (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1268.)

Here, given the prosecutor's argument as a whole and the instructions that were given to the jury, we find it was not reasonably likely the jury understood or applied the challenged statement in an improper manner.

As noted above, section 290.013 provides, "A person who was last registered at a residence address … who changes his or her residence address, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, shall, in person, within five working days of the move, inform the law enforcement agency or agencies with which he or she last registered of the move." (§ 290.013, subd. (a).) As also noted above, the prosecutor told the jury in his initial closing argument that Clark knew he had to notify authorities in Sacramento County if he changed his address and the fact that he did not do so supported an inference he continued to live in Sacramento County. Clark acknowledges this argument was "permissible," and we agree.

Clark notes he was not charged with violating section 290.013, and he argues "it was not permissible to tell the jury that [he] could be found guilty of the charged offenses

19

[i.e., failing to register within five working days of his date of birth as required by § 290.012, and failing to register within five working days of being released from incarceration as required by § 290.015] based on a potential violation of section 290.013." We agree in the abstract, but we do not view the prosecutor's rebuttal argument as telling the jury it could find Clark guilty of the charged offenses based on a violation of section 290.013. Instead, we view the prosecutor's rebuttal as a permissible response to defense counsel's argument that "I don't have to prove to you that Mr. Clark moved. … *In fact, he could have been somewhere else* [i.e., he could moved out of Sacramento or out of California]. *He could have violated that registration* [i.e., he could have violated the requirement that he notify law enforcement if he moved out of Sacramento or out of California]. It's not on me. It's their burden to prove to you that he continued to be a resident of this county." (Italics added.) Particularly when viewed in the context of the prosecutor's entire argument, the one challenged statement in rebuttal simply reiterated his earlier argument (which Clark agrees was permissible) that the jury could infer Clark remained in Sacramento County based on his failure to notify authorities he had left. "In addressing a claim of prosecutorial misconduct … , we view the prosecutor's comments in relation to the remarks of defense counsel, and inquire whether the former constitutes a fair response to the latter." (*People v. Frye* (1998) 18 Cal.4th 894, 978.) We find the prosecutor's response to defense counsel's argument was a fair — if perhaps somewhat inartful — response to the latter.

When we consider the prosecutor's entire argument in conjunction with the jury instructions, our finding rejecting misconduct becomes even stronger. As to count one, the jury was instructed the People had to prove beyond a reasonable doubt that Clark resided in Sacramento; that he knew he had a duty to register within five days of his birthday; and that he failed to register within five days of his birthday. As to count two, the jury was instructed the People had to prove beyond a reasonable doubt that Clark resided in Sacramento; that he knew he had a duty to register upon release from

20

incarceration; and that he failed to register upon his release from incarceration. We presume the jury followed the court's instructions, and that it did not understand or apply the prosecutor's rebuttal in an improper manner. (See *People v. Katzenberger, supra*, 178 Cal.App.4th at p. 1268 [" 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade" ' "].) In particular, we find it was not reasonably likely a jury that was so instructed would have understood that even if it believed Clark was not a resident of Sacramento at the time of the alleged offenses, it should still find him guilty "because he did not file a change of address form and was thus 'out of compliance with 'his 290[.013] registration" requirement.

## DISPOSITION

The judgment is affirmed.

/s/ _____
EARL, P. J.

We concur:

/s/ _____
BOULWARE EURIE, J.

/s/ _____
MESIWALA, J.

21